Good morning, Your Honors. Robert Fong for Introper. Mr. Cole would also like to argue, so I'm going to try to go as quickly as I can. And we're mindful that you're splitting the time, and we'll try to be generous with the time. It's kind of tough. It really is. All right. Does the Court have any questions? Well, if that's the way you'd like to proceed, I guess I can start you off with one. The sanctions in this case, as I understand it, are imposed because the District Court believed that three causes of action were barred by the statute of limitations, correct? Yes, Your Honor. And that filing the complaint without either sufficiently investigating when the discovery occurred or knowing when it occurred was sanctionable conduct. Yes. As I look at the District Court record, I'm not clear whether the District Court concluded that the two of you knew at the time you signed the complaint that it was barred or whether or not you just simply failed to investigate sufficiently. Does the record disclose that? Can I address that, Your Honor? Sure. I think the record is very unclear. My read of the record is that there was an assumption that Mr. Cole and I simply did not ascertain when any cause of action accrued. And that's just not true. We knew when they did. Well, but how does the record disclose that? As far as I can tell, what the district judge said was, look, these are contract claims. On their face, they're two-year claims. It's more than two years has passed since the events. And now in the third amended complaint, you admit that the discovery occurred more than two years before. So that's why I'm imposing the sanctions. So what kind of record do we have with respect to that? Is that all we have? No. The record we have is that we did, in fact, allege a specific date of accrual for the contract, one contract claim. But our position was not that it's a two-year or four-year or whether – what was the contract? What was the nature of the contract? That depended upon our investigation of the evidence. Well, but the judge said to the extent you're speaking about a contract, if it's written, it's one statute of limitations. If it's oral, it's another. Correct. And concluded that it was pretty clear that it fell within the two-year statute. And so I understand your defense on one of the claims is it's not so clear because it might be a statutory claim. But with respect to the other two, what's the defense? The defense relative to the contract claim is I think we certainly had at least a colorable claim relative to the breach of duty of loyalty and breach of fiduciary duty being a three-year or four-year statute under the McSweeny case and under the Agar case. But the judge just asked you about the other two claims, the contract and the tortious interference claim. The tortious interference claim, as I indicated in my reply, I believe when you go to the gist of the action, what is the gist of the action? There's no allegation of fraud there. There was in the Third Amendment complaint, Your Honor. But not as to the tortious. Do you have a separate tortious interference claim in the Third Amendment complaint that talks about tortious interference?  But it also talks about fraud. That was stricken because we were not given specific leave to add a fraud count. Right. So in your first two complaints, you don't have a fraud allegation in the tortious interference claim. And the judge says it's rather clearly subject to a two-year statute of limitations. And now you say, well, I added fraud improperly in the third one because I wasn't given leave to, and that saves it. That's your argument, isn't it? Well, we were invited to file a motion to add it. We did, and it was denied. But we did not file this in bad faith. Our investigation showed that there was uncertainty relative to the contract claim. Was it in writing? Was there oral? Is your investigation in the record? Michael Crawford of the district court that said, here's what we did, and here's how we got there. Our investigation is comprised of the defendant's answer, which did not raise the statute, and which specifically denied that it was not in writing, and where they came up with a counterclaim alleging that the contract was in writing. So you had two different positions. A client position that originally to us, they told us, they didn't know of a writing that they could present that comprised a contract. The defendants had a contract, which they did present, and they got a $100,000 reward for. So there were two different positions. The facts evolved. Mr. Fong, could I interject a question? I was interested in Judge Hurwitz's question, which I thought was, does the record show us that you made an investigation before asserting the claims? Your response is detailing what you said in the answer. In response to the question. I do not recall whether Mr. Cole included that specific investigation in the opposition to the motion for sanctions, but we did allude to the pleadings, which referenced a writing. I understand what the documents show. The question that Judge Gould is asking better than the way I asked it was, you're making some allegations about what you did and how you did it, and I don't find them in the record. Am I correct in thinking that they're not in the record? I think it's not in the record on the opposition to the motions for sanctions, other than a reference to the pleadings, Your Honor. Okay. You've exceeded your time. Why don't we let your colleague argue it. Yes, Your Honor. We'll see whether you need more. Reserve something for rebuttal, if possible. Well, you guys have ten minutes in total, but we'll give you some time for rebuttal. To your answer, I'm Russell Cole. To answer your question, no, I do not believe we adequately presented in the record our investigation. However, what I think is clear from the record, as explained in the brief, is that by the time early on in the case, we had a mediation opposing counsel, walked in with a document in Chinese, waved it around and said, here's the written contract. Our client, who only spoke Chinese, said that was the contract. The defense said it was the contract. Our interpreter said it was the contract. And from that point on, it seemed to confirm what our clients have been telling us, which is we have a written contract, but we're not sure if we can find it. So from that point on, we made no further investigation because it seemed everyone agreed. And, in fact, they have pled a written contract. In fact, even in ‑‑ But you pled oral contract. You pled an oral contract. No. No, we pled a ‑‑ no. You pled a contract. We pled a contract. And then you said it wasn't ‑‑ you said that it wasn't ‑‑ there were no writings that supported that oral contract. Right, which was, I admit, is a very inarticulate way to try to frame it under California law. Well, I read that as it's an oral contract. And I think the district judge say if you say we have a contract but there's no writings that form it, then you've got an oral contract and you've got a two‑year statute of limitations. Right. And I ‑‑ that was ‑‑ we all make mistakes. That was clearly a mistake. But even on page 11 of 19 of the defendant's brief, they say they call it an unexecuted memorandum of understanding with handwritten notes. So they also were saying that there was this writing in Chinese that everyone had. So it seemed clear to us that there are two points. One is that the evidence, that's where the record is of what the contract is. So let me focus on your claim, your defense, I take it, is that we didn't know whether the contract was written or oral. So when we filed this complaint that would have been beyond the statute of limitations had it been an oral contract, we did it in good faith because we simply didn't know whether it was written or oral? Yes, and we also knew undoubtedly that it had ‑‑ we weren't trying to pretend it was oral. We knew from the beginning. They had never walked into Mr. Fong's office until after two years had gone by. So there was no chance of it being anything but a written contract. And if the complaint had said that, or any of the three complaints had said that, I think the judge would have had a much more difficult time. But I think that reading these complaints, at least, that I was in court, it seems like you're asserting an oral contract. The language Judge Rustani just cited to me says it's an unwritten agreement. I don't know what ‑‑ Poorly paraphrased, whatever I did. One of the reasons I'm glad to have this opportunity is if you look at the minute order granting the motion for sanctions and granting the motion for attorney's fees, both of them were decided without oral argument. This is the first chance I have had to look at someone in black robes and discuss what errors I might have made or how I might have done it wrong. I'll admit that pleading may not have been artful. We didn't know. We had clients in China who didn't speak English. We knew we were after two years beyond. Did you seek an evidentiary hearing for the district judge? I think if you had and he had turned you down, I would have some sympathy with the notion that you never had a chance to argue it before. Oh, at the sanctions, I asked. I showed up for the attorney's fees motion, and I was handed an eight‑page written memorandum saying I lost. I asked the judge could I respond. He said no and then proceeded to berate me for two minutes and call me at best incompetent and at worst dishonest but would not let me respond or add anything. Your appellate briefs, and I'm trying to recall them, but I think I recall them correctly, you do make a due process argument, do you? I don't know. Your briefs don't say we were denied the opportunity to respond or we didn't have the opportunity to present evidence. Briefs just say it shouldn't have been imposed. We filed an opposition to the motion for sanctions, and it wasn't very good, but we did. We had the opportunity to do it, and unfortunately we didn't do that good of a job. Regarding the interference with prospective economic claim, in my brief I think I make another error. I essentially fall into the same trap that Judge Mutierrez falls into, which is I assumed, oh, it's a two‑year statute of limitations, therefore it must be barred. But that's not true. In preparing for this argument and talking over with Mr. Fong, we realized you have to understand that CUTSA, the California Uniform Trade Secrets Act, was a big part of it. The 212B6 motions were to try to get rid of certain claims based on CUTSA. We eventually dumped CUTSA because we really didn't have trade secrets. But what we had from the very first our clients came in to talk to us was they were worried that Mr. Lynn was, in fact, pretending to be our clients, pretending to sell their machines, and interfering with the prospective economic advantage, which could have been an ongoing tort. When they walked in, when we filed all those complaints, it could still be going on. So I made the error, and I believe Judge Mutierrez made the error, of assuming that somehow if it's a two‑year statute of limitations, it must be barred. But that's not true. The contract or the breach of duty claim might flow from the time it was discovered when the Taiwanese police arrested Mr. Lynn. But the interference with economic advantage could have been ongoing. There's absolutely nothing in the record, nothing that should have allowed Judge Mutierrez to find that, oh, this is time barred. Because at the time we thought it was still ‑‑ Let me make this argument now. I mean, we have to decide whether the district court erred. Correct. And if you don't put an argument before him, we can't say that he erred. You have to put it before him, not before us for the first time. Well, you can find error. He has to have evidence from which to find. There was nothing in the record from which to find. Well, but tortious interference is a two‑year statute, correct? Correct. He looks at your complaint and says it's filed more than two years after the alleged interference. Your complaint doesn't allege an ongoing interference. It doesn't say the interference continues on to this day or something like that. He just looks at the allegations in the complaint. I believe it does. I believe that. It says that the interference is continuing? I believe it does. I'll take a look at it. It should because that's what they were alleging. Which complaint are you referencing? I don't think the factual allegations change other than the contract. It's in your factual allegation that it's an ongoing tort. Okay. It certainly should be. That's one of the issues you're on. And as far as I understand it, because of the abuse of discretion standard, we need to talk about legal error, and the legal error would be finding that somehow that we were playing fast and loose with Rule 11 about the economic interference claim. There is nothing in the record to find that either we did allege that it was ongoing or we didn't allege enough. But there's nowhere is there an allegation that says any interference was at a certain date that was two years before the filing of the complaint. I think I understand your arguments, and we'd let you go about three minutes over. We'll give you both a little bit of time for rebuttal. Let's hear from the other side. Good morning, Your Honors. I'd like to pick up on a couple points. One is in the complaint it doesn't actually mention that it was ongoing in terms of the tortious interference. The claim never mentions it. In the factual background it doesn't mention it either because they're alleging he was terminated. So there was no reference to that. In terms of the actual contract, when they were saying that they didn't have an opportunity to respond, I think it's important to point out that when our client had moved for summary judgment on their breach of contract claim, the other side never responded to it. In fact, the court ended up issuing a default because of the fact that the plaintiffs had not responded to our motion for summary judgment. And in the motion for summary judgment, there were arguments about there being two separate contracts, one being an oral and the other one being a written contract, and they never did respond to that. So the question is then did the district court abuse its discretion with the facts that were in front of it, particularly in light of the fact that there were no representations ever made or never a response from it? Let me ask you about the so-called breach of loyalty claim. Okay. And I start out by saying, thank God I'm not a California lawyer. But when I look through the statutes there, it strikes me that there's a non-frivolous argument that it may be statutory. Nobody's saying that it is. Nobody's appealing the district judge's determinations here. But is the argument that a four-year statute applied to the breach of loyalty claim, if you will, so frivolous that it deserves sanctions? Well, based on the allegations in the complaint, as in the brief I had mentioned, there was no allegation that this was being filed based on any statutory claim. It was following the breach of contract claim. And under the Ninth Circuit law, you have to look at what the Ninth Circuit refers to as the gravemen, of the allegation being that it was based on that. Yeah, but somebody can allege a claim based on a single event and come up with four theories for it, if you will. Sure. And one of their theories was that not only did this breach this alleged contract, but it also what your clients did somehow violated a duty of loyalty to their client. And it's not the world's greatest argument, but there is a statute that suggests that under some circumstances there's a four-year statute of limitations for certain breaches of loyalty. That's correct. So I'm wondering whether that argument was so frivolous as to deserve sanction. I think in the case, well, in the Mattel case that the district court was citing too, that was based on an oral contract as well. In that case, the court looked to the California Code of Civil Procedure and said, and cited to, I believe it was 337A1, which was when it's based on a breach of, in this case, when it's based on an oral contract, we're going to apply the two-year statute of limitations, barring anything else that wasn't being alleged based on any statutory violation. I think the district court relied on what was in the pleadings in finding it a two-year. Can you help us out on the procedural way this case unfolded? Normally, in my experience, sanctions are imposed after the judge says, I'm going to impose sanctions on you unless you explain why here you moved for sanctions. That's correct. They responded. The judge granted the motion. Yes. Did anybody ask for an evidentiary hearing? I am not aware of that. I think what happened was we had simultaneous motions for summary judgment that took place. The other side did not respond to our motion for summary judgment. They made representations that they want this case essentially to go away, and that was the end of it. I don't know if they were expecting that they would be sanctioned at that point. I can't speak what their thoughts were. But you filed a motion seeking sanctions. We did file a motion after the court had dismissed these claims. So procedurally what happened was we moved to dismiss the claims, the breach of contract. The court granted the motion. The court granted the motion. And then in light of that, I think there were also references in the order to the fact that, I mean, there were definitely references about it being over the statute of limitations. So in light of the fact that we had already moved to dismiss these claims twice by the time it came to the third amended complaint and that they finally indicated that it was 2009 that they learned about or that the cause of action had began, at that point we had also moved for sanctions because they had delayed too long. Did you raise the statute of limitations defense in your answer to either? Well, you didn't because you moved to dismiss twice. That's right. We moved to dismiss at that time. That's the point of raising affirmative defenses. That's right, yeah. You moved to dismiss on different grounds. On different grounds, yeah. Okay. And so when the third complaint came around, and that's when you moved on. That's when we moved on. You moved for summary judgment on statute of limitations. That's correct. At that point then it was learned. Is there, let's assume that we, just for purposes of discussion, that we were to conclude that at least with respect to the breach of loyalty claim, they had a non-frivolous argument on the statute of limitations. What should we do with the sanctions? As I look at this record, the judge seems to have imposed the sanctions on the basis of how many complaints each of the two lawyers signed. Right. Should we, if we find that one of the three claims wasn't frivolous or two of them weren't frivolous, if we find all three weren't, I know what we do. If we find that one wasn't, what do we do? Well, I guess in this case, so with respect to the three claims, as far as I think Mr. Cole had admitted, at least with the tortious interference claim that it was a mistake to include in the complaint. So we have a representation already from them that the work we had done to move to dismiss that claim should not have been in there. As far as the breach of contract claim, I agree. I think if you're going to somehow separate it, we had already moved to dismiss collectively on those claims. I'm less interested in what you all did than what the sanctions the judge imposed. Yeah. The judge didn't seem to impose sanctions based on how much work you did. The judge seems to, the distinction seems to be how many complaints each person signed. I think. Is that fair? I think that's part of it. I think the judge also seemed troubled by the fact of how the other side had not informed the district court about their investigation, about what they had done to make sure these claims were adequately pled. And so I think it wasn't just based on one. I think it was the totality of the circumstances. Why different sanctions on Mr. Cole and Mr. Fong? I'm sorry. Why different sanctions on Mr. Cole and Mr. Fong? The sanctions were not different. They were jointly and severally held liable for the claims. I'm not sure I followed. Oh, I'm sorry. I had thought that there were slightly different sanctions imposed on each of the two. No, no, it was jointly and severally. They may have been jointly and severally liable, but there was 1,000 and 2,000. Am I wrong about that? Oh, yeah, that's correct. As far as that, the attorney's fees for the first and second motions to dismiss were imputed on both of them. Right. Yeah. And so why the different ones? Why are they? Why is one 1,000 and the other 2,000? What does the record tell me about that? I'd have to check again. I don't recall if that's exactly right. See, from my perspective, it seems to be related to how many complaints they signed, but maybe I'm wrong. And I'll ask them, but that's the only distinction. The same person's name does not appear on every complaint. That is probably the case, yes. But the judge didn't make that clear, I take it. I don't believe so. I'd have to double-check. I'm not sure about the answer to that. If one of the claims was not frivolous, maybe wrong, but not frivolous, then would we have to send it back for the judge to decide to apportion attorney's fees? That concerns me. I think it's the same question my colleague was answering with a little twist. I was focusing on attorney's fees. Yeah. I can only say that when we were filing the motions to dismiss, it was done together because it wasn't as if we would say $1,000 would have been allocated just to this and $2,000. We were looking at it collectively, and the court had already known at that point that the claims were untimely. Something that would show us that the judge wanted to take this thing as a whole piece as opposed to he was viewing each of the claims separately. I'm not sure. I think how the judge had prefaced it was he looked at their conduct leading into it, and then he went into the claim. The way he proceeded with it was you should have done your investigation. You knew about that you should have known about when this oral contract was entered into and when the cause of action arose. So the fact that you waited until your third amended complaint gave him a lot of concern with the conduct that they had undertaken. From there, then he went into the other claim. So I think it was triggered by their conduct leading into it. Just so that we're clear, the judge did impose attorney's fees jointly, but he also did separate sanctions of $1,000 and $2,000. That's right. That's correct. My question was related to that, why the distinction between the two lawyers. I understand. Judge Gould, do you have any questions? No questions, thanks. Why don't we put a minute on the clock for each of the respondents so that they have rebuttal. Each of the appellants, I'm sorry. Thank you, Your Honor. Relative to filing an answer, they did file an answer. That's at ER 943. It was an answer to the second amended complaint. The statute of limitations was not raised. And, in fact, they raised a counterclaim alleging the existence of a written contract. Of course, they would have no statute of limitations defense to an oral contract, would they? They would have a statute of limitations defense to an oral contract. They were parties to the contract. They know whether it's oral or written. They didn't raise it. But you alleged an oral one, and they said, well, there's really a written one. Well, I don't think we alleged specifically it was oral. But relative to the other issue of continuing tort. They answered the second amended complaint, but you told them about your discovery in the third amended complaint, no? That's correct.  That's correct. Well, that answers that. But Mr. Lynn would have known when he was terminated and when he was caught red-handed. Those are not issues that were unknown to him. Tell me about the allegation that you were just about to tell me about. Pardon? Allegation of some ongoing tort. Some ongoing tort. If you look at. . . Which complaint? This is in the third amended complaint. FER 937. Let's help me again. Is that second or third? It's the third. Third, okay. So if we look at, for instance, at page 31 to 32. . . Can I have a paragraph number? The bottom sentence on page 931, further plaintiffs are informed to leave. . . Can I have a paragraph number? Paragraph 15. Thank you. Of the third amended complaint. Third amended complaint. Go ahead. So if we look at page 5, bottom line 28. . . Further plaintiffs are informed to leave that. . . In 2011, in a further attempt to cover up his tortious activity. . . Lynn caused himself to be listed. . . In late filed 2008, 2009, 2010 federal and California federal tax returns. That he was 100% shareholder. That was part of what he was doing. He was taking over the corporation that my clients had formed. How is listing yourself as a shareholder tortious interference? Pardon me? How is that tortious interference? Oh, that was part of the activity. . . The tortious interference that's alleged is the . . . I'm looking at the complaint here. It's the sixth cause of action, correct? Okay. It interfered with business relationships. Yes. That's the tortious interference that you're alleging. Why is the fact that somebody filed a supposedly fraudulent tax return two years after the interference suggest that there's an ongoing tortious interference? It was more than fraudulent tax returns. It was a series of events. How did those events interfere with your business relationships with the clients? With other clients? Because he formed what I call a Chinese duplicate of agape industry, called agape industrial. So then what he tried to do is to change history by saying that he was the 100 percent owner of agape industry. Okay. I understand your argument on this point. Okay. Why don't we give your colleague another minute to respond. All right. Thank you, Ron. What Mr. Lin did was pretend to be our clients in the United States because he's the only English-speaking person. He started a corporation with the same name. But here's the problem. The lawsuit's been dismissed, so you can't argue that it was improper. You haven't appealed the dismissal. What we really need to know is what led you to make the allegations. I'm saying in response to your question about why is the tax return, why is that tortious, it's not necessarily except what was tortious is he was pretending he was going to trade shows. He was pretending to be our customers, our clients, ongoing. That's when they first came to us. But I don't see an allegation to that in the complaint. Is there an allegation to that in the complaint? I thought Mr. Fong just told you. No, but he would. When it talks about the tax returns, it also talks about the fact that he was filing corporate documents. But the tortious interference was representing to your clients that he was part of the organization. No, the tortious interference was representing to other customers. That's right. My point is that the filing of these allegedly fraudulent tax returns is not a representation to customers. The interference must have occurred at some other point. Now, having said that, go ahead and finish your argument. I don't want to. Okay. The paragraph. The cover-up is not the tortious interference. Well, it's part and parcel of the. Okay. But the way you pled this, you're pleading this as kind of evidence, cover-up evidence of the tortious interference. That's how it reads to me, just reading it right now. But I think your problem is we're not here to argue whether or not the tortious interference claim should have been dismissed. You didn't appeal that. It's dismissed. Right. The question is on the basis of the complaints before the judge, how could he tell whether or not you appropriately investigated it? And so that's. Paragraph 19 of the complaint Mr. Fong just cited you. It says that the defendants have represented. They are the manufactured machinery which defendant is selling. Current present tense that he was an ongoing activity. Everybody knew it. Again, we he knew he was going to the trade shows. He knew he was still representing himself as a copy. I would like to point out that the Hwang K case, which is prominently featured in the briefs. I don't know about a four-year statute of limitations. But there was clearly a three-year statute of limitations for the breach of duty of loyalty. It's clear under California law. It's clear under the Mattel case that the district court case in San Francisco, which was cited, because in that case judge, the judge acknowledges that the breach of duty of loyalty under California law arises under the labor code. So even the authority cited by the district court in sanctioning us shows that there was, in fact, a three-year statute of limitations for the breach of duty of loyalty. There's no question about it under California law. California law applies. It was absolutely appropriate to do that. I've let you exceed your time, so why don't you wrap up. The last point I'd make is that there's a misconception that somehow in our complaint we suddenly told them when we discovered it. Again, what happened is two years before Mr. Lin was arrested by the Taiwanese police and fired on the spot, they took his laptop.  There was no question about it when it was discovered. The only people who didn't know when it was discovered were Mr. Fong and I, and then we went to that mediation early on in the case, and they started waving around a purported contract and acting as if everybody knew when they found out. There was absolutely no reason to investigate. It is not a matter of us informing them, and that is a mistake that Judge Gutierrez made, assuming that somehow they didn't know. Everybody except plaintiff's counsel knew long beforehand when things were discovered. Thank you. Thank counsel for their arguments and briefs. And this case will be submitted. Thank you, Your Honor.
judges: Gould, Hurwitz, Restani